**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA FT. PIERCE DIVISION**

**CASE NO. 24-14336-CIV-MARTINEZ/MAYNARD**

DANIEL PORTER, Individually, and
MARITIME RESEARCH & RECOVERY, LLC,

Plaintiffs,

v.

CARL ALLEN, Individually, and
ALLEN EXPLORATION, LLC,

Defendants. _____/

**<u>PLAINTIFFS' FIRST MOTION TO AMEND COMPLAINT</u>**

 Comes now the Plaintiffs Daniel Porter, Individually and Maritime Research & Recovery, LLC, and moves this Honorable Court to grant this Motion for the Plaintiffs to file their First Amendment Complaint.

 As grounds in support of this motion the Plaintiffs would show the following:

1. This Motion is the first request by the Plaintiffs to amend their Complaint.

2. The Complaint in this case needs to be amended in the following respects:

 a) To correct the relief sought in the count alleging "Defamation."

 b) To withdraw and remove the count seeking "Replevin."

 c) To add a new Count alleging the Defendants violated Florida's Unfair and Deceptive Trade Practices Act (F.S. 501).

 d) To correct and add a request for punitive damages for all counts.

 e) To correct certain factual allegations.

3. Plaintiffs' Motion to Amend its Complaint is timely, will not delay the trial or resolution of this cause, and is necessary to provide to the Plaintiffs a full opportunity to seek relief upon which they are legally entitled to.

4. The proposed First Amended Complaint is attached to this Motion and sets forth the five grounds justifying the need to amend the Complaint.

## <u>MEMORANDUM OF LAW</u>

Plaintiffs' First Motion to Amend its Complaint is timely:  This Court has set a timetable governing pre-trial procedures in this case, which requires motions to amend the complaint to be filed by December 27, 2024 (ECF-3, Page 5 CM/ECF).  Fed. R. Civ. P. 15(2) permits amendments to a Complaint upon leave of Court.  This rule provides that a court should "*freely give leave when justice so requires*."

The Plaintiffs have set forth five (5) reasons in support of this motion which establish due cause for why justice for the Plaintiffs require the Complaint to be amended.  Given this Court's established timetable for amendments to the Complaint, lack of prejudice to the Defendants and need for the limited amendments sought, the Plaintiffs respectfully request this motion be granted.

***WHEREFORE***, the grounds and law set forth in this motion, the Plaintiffs move this Honorable Court to grant this Motion for Plaintiffs to file their First Amended Complaint.

Counsel for the Plaintiffs have conferred with Counsel for the Defendants on this motion. Counsel for the Defendants <u>objects</u> to this motion.

**LAW OFFICE OF RICHARD D. KIBBEY, P.A.**
Attorney for the Plaintiffs
416 SW Camden Avenue
Stuart, FL 34994
Telephone:  (772)286-0023

*/s/ Richard D. Kibbey*
RICHARD D. KIBBEY
Florida Bar No. 25514
Email:   Kibbeylegal@gmail.com

**JASON M. WANDNER, P.A.**
Attorney for the Plaintiffs
100 N. Biscayne Blvd, Suite 1607
Miami, FL  33132
Telephone: (786)412-1505

*/s/ Jason M. Wandner*
JASON M. WANDNER
Florida Bar No. 0114960
Email:   Jason@wandnerlaw.com

## CERTIFICATE OF SERVICE

*I HEREBY CERTIFY* that a true and correct copy of the foregoing document was

electronically filed with the Clerk of the Court using the CM/ECF system, on this 9th day of

December 2024, and that the foregoing document is being served this day on all counsel of record

identified on the attached Service List, via transmission of Notices of Electronic Filing generated

by CM/ECF:

**CHRISTOPHER F. LANZA, P.A.**
Attorneys for Defendants Carl Allen & Allen Exploration, LLC
290 NW 165th Street, P-600
Miami, FL 33169
Phone: (305) 956-9040
Email: cfl@lanzalaw.com

**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA FT. PIERCE DIVISION**

**CASE NO. 24-14336-CIV-MARTINEZ/MAYNARD**

DANIEL PORTER, Individually, and
MARITIME RESEARCH & RECOVERY, LLC,

Plaintiffs,

v.

CARL ALLEN, Individually, and
ALLEN EXPLORATION, LLC,

Defendants. _____/

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

Comes now the Plaintiffs, **MARITIME RESEARCH & RECOVERY, LLC** and **DANIEL PORTER**, Individually, by and through their undersigned counsel and files this Complaint against **CARL ALLEN**, Individually, and **ALLEN EXPLORATION, LLC,** and in support and thereof allege as follows:

**Parties, Jurisdiction and Venue**

1.      This is an action seeking both compensatory and punitive damages and attorneys' fees in excess of $5 million dollars (exclusive of interest and costs) from each Defendants, and equitable relief from each Defendant.

2.      This action was initially filed in the Circuit Court for Martin County, Florida but was removed by the Defendants to this Honorable Court.

3.      This Court has jurisdiction over the Parties and subject matter pursuant to:

a)  Complete diversity of citizenship between all Plaintiffs and all Defendants and the amount in controversy exceeds $75,000 pursuant to 28 USC § 1332(a)(1).

b)  Plaintiff Maritime Research & Recovery, LLC, ("MRR") is a Limited Liability Company organized under the laws of the state of Delaware.  Thus, MRR is a citizen of the State of Delaware for the purpose of diversity jurisdiction 28 U.S.C §1332 (c)(1).

c)  Defendant AEX is a Texas Limited Liability Company; thus AEX is a citizen of Texas for the purposes of diversity jurisdiction 28 U.S.C §1332 (c)(1).  Carl Allen is a citizen of the state of Texas.

7.     Plaintiff  Daniel Porter ("Porter,") is over 18 years of age and is domiciled in Florida. Since Porter, MRR, AEX and Allen are citizens of different states, complete diversity exists between the parties.

8.     Venue – The Southern District of Florida, Fort Pierce Division, embraces the Court where this action was first brought 28 U.S.C § 1441(a).

9.     Defendant, Carl Allen, ("Allen") is over 18 years of age.  Plaintiffs have a good faith belief that Allen is a resident of Florida during all relevant times in this matter and has routinely conducted business related to the recovery of Spanish shipwreck treasure with the Plaintiffs in Martin County, Florida, individually, and as an agent for a Texas corporation which he controls, Allen Exploration, LLC ("AEX").

10. Allen has, for years, spent considerable time residing in Martin County, Florida.

11.     AEX is a Texas Limited Liability Company which has routinely conducted its business in Martin County, Florida.

12.     During the time period between 2020 and July 2024 Allen has spent significant time residing in Martin County, Florida.  He has conducted on behalf of himself and AEX numerous treasure-related business meetings from this residence in Martin County; including at least 3 meetings with Porter regarding the salvage of the sunken Spanish galleon, which sunk in 1656, "*Maravillas*." Allen and AEX have sent and received numerous text messages, emails and phone calls to and from Martin County relating to the salvage of *Maravillas* treasure.

13.     In 2023 Allen made a public speech in Martin County regarding his and AEX treasure recovery from the *Maravillas* and brought with him dozens of artifacts recovered by MRR to show his audience.

14.     At the time Porter first met Allen, Porter was a world-renowned treasure salvor. Porter began diving for Spanish treasure in his late teens and has successfully found and helped recover millions of dollars of Spanish treasure off the "Treasure Coast" of Florida and has worked extensively on salvaging the famed "Atocha" shipwreck off the coast of Key West.  Porter has also been contracted by other individuals and has salvaged sunken Spanish treasure off the coast of Panama and other locations.

15.     At the time Porter first met Allen, Allen was inexperienced in the intricacies of finding and recovering sunken treasure.  Knowing this, Allen and AEX entered into a contract with Porter and MRR to educate, advise and implement a treasure recovery operation for the *Maravillas*. The original contract between MRR and AEX for this salvage called for Porter and MRR to receive 30% of recovered artifacts.  The parties did divide initially recovered treasure per that 30% agreed to division.

16.     Porter was born in Fort Pierce and raised on the Treasure Coast, and at all times relevant to this action resided in Palm City, Florida.  He has a Florida driver's license and has listed his address in Palm City as the official corporate address for MRR.  This corporation was formed in Delaware.

17.     The Defendants have electronically sent treasure-related documents to Porter and MRR to Porter's residential address in Palm City. MRR has, at all times relevant, an administrative assistant who also resided in Martin County, Florida during the relevant time periods of this Complaint, and this employee routinely received emails and material from AEX regarding the salvage of the *Maravillas*.

18.     All conditions precedent to the filing of this action have been performed, excused, and/or waived.

19.     Plaintiffs have retained Attorneys Richard Kibbey and Jason Wandner to represent them in this matter and have agreed to pay the attorneys a reasonable fee for their services.

**History of the Parties' Business Relationships and their Search for the Lost Spanish Treasure of the Nuestra Senora de la *Maravillas* ("*Maravillas*")**

> ***"Do you believe that stuff the old man was saying the other night about gold changin' a man's soul so he ain't the same sort of man as he was before finding' it?"* The Treasure of the Sierra Madre, 1948.**

20.     In 1639 King Philip of Spain order the construction of an 850-ton galleon christened the Nuestra Senora de la *Maravillas* for his sea armada, with the ship delivered to him on April of 1647.

21.     In 1654 Spain formed a flotilla of seven galleons, including the *Maravillas*, four merchant ships and two other vessels for sailing to Cartagena (Columbia) and Panama to pick up three million pesos from a treasure galleon sunk off Ecuador.  The registered value of the gold and silver aboard the *Maravillas* was approximately **$5 Billion** dollars in today's value. Typically, such galleons carried substantial unregistered cargo, silver and gold, thus ballooning the loss figures.

22.     In 1656, awaiting the lifting of poor sailing weather, the decision was made to send this flotilla back to Spain from Havana.

23.     In January of 1656 the flotilla confronted unexpected rough seas off the coast of the Bahamas (approximately 50 miles east of Stuart, Florida), causing one of the galleons to ram the side of the *Maravillas*, causing catastrophic damage to the ship.

  The *Maravillas* hit a reef repeatedly and began to tumble, breaking the ship into pieces.  The ship was carrying between three and six million pesos in gold and silver; over 400 passengers and crew drowned.

24.     From 1656 to 1684 Spain sent several salvage expeditions to the area where the *Maravillas* sunk but managed to recover only a small amount of silver and gold it had carried.

25.     In 1972 treasure salvors from the United States discovered the general vicinity where the *Maravillas* sank and began to salvage what they found, including gold ingots; over a half ton of silver bars and silver and gold coins.

26.     From 1986 to early 1990's, further salvage operations tried unsuccessfully to locate the primary portion of the wreck which contained the gold and silver earmarked for Spain.  This recovery effort was unsuccessful but gold and silver coins, gold jewelry, gold bars and a bronze cannon were retrieved.

27.     In 1999 Government of the Bahamas barred further salvaged operations of the *Maravillas*.

28.     It has been conservatively estimated that there remains $1.5 billion U.S. dollars in unrecovered gold and silver of the *Maravillas*.

29.     Defendant Allen, and AEX, utilized the reputation, expertise and specialized equipment of Plaintiffs Porter and MRR to obtain a recovery permit from the Bahamian government for salvaging the *Maravillas* wreck site.

30.     Allen and AEX had, as a condition of receiving the recovery permit from the Bahamian government, agreed to give the government of the Bahamas a portion of all artifacts it recovered from the *Maravillas*.  The remaining artifacts were to be split between the Defendants and Plaintiffs on a percentage basis.

31.     Defendants Allen and AEX entered into a written agreement referred to as the "Service Agreement" that set forth that Plaintiff Porter and MRR were in charge of the renewed salvage of the *Maravillas*.  This agreement required Allen and AE to underwrite the general costs associated with the salvage efforts, which included vessel use, crew, salaries and other costs.

32.     This original agreement between the parties also called for Allen and AEX to pay to Porter and MRR 30% of all recovered treasure after the Bahamian government had taken its share of the treasure for its cultural use.

33.     MRR, through its managing partner, Porter, was required by the agreement to use Porter's vast knowledge of salvaging Spanish treasure shipwrecks, to create operational planning for the new salvage effort, and to train Bahamian divers and oversee the day-to-day salvage effort.

34. In return for MRR's assistance in recovering Spanish treasure from the *Maravillas* wreck, Allen and AEX agreed to pay to MRR a 30% portion of all artifacts MRR recovered, with the balance going to Allen and AEX. At a later date the 30% was reduced to 25%.

35. MRR's work at the salvage site was arduous and dangerous. Spanning over three years Porter, made over 100 trips to sea, along with its crew of divers, and dug over 9,000 large exploration areas in the seabed, having to dig typically through eight feet of sand, to find the original seabed remnants of the wreck.

36. As a direct result of Porter's expertise and MRR's efforts, millions of dollars of artifacts were recovered, including gold link belts, gold coins, silver bars, various gold jewelry, near flawless emeralds and thousands of valuable ship artifacts.

37. In August of 2021 Dr. Lee Spence notified Plaintiff Porter that he, Spence, had a claim to the *Maravillas* site, and that MRR had a prior contract with him to salvage the *Maravillas* site.

38. The Defendants and Preston Paine, an officer with AEX, had previous knowledge of Spence's claims and anticipated he might assert them at some point.

39. Spence's email notice to Porter requested Plaintiffs and Defendants to work with Spence in accordance with his claims.

40. The Defendants retained Attorney David Concannon to provide legal advice to them and Plaintiffs on how to defend Spence's claims to the *Maravillas* salvage. The Defendants were dismissive of Spence's claims, and believed Spence did not have the financial ability to take on the Defendants in court on this issue. The Defendants, Plaintiffs, and Attorney Concannon jointly discussed and strategized on how they could avoid and defend against Spence's claims.

41.     In late 2021 Concannon, Porter and Preston Paine (on behalf of AEX), agreed that the best way to avoid and defend against Spence's claim would be to terminate the written contract ("Service Agreement") that the Plaintiffs and Defendants had entered into regarding this salvage. This termination was done in a letter by Preston Paine to Porter with a copy to Attorney Concannon.

42.     In furtherance of the strategy created by Concannon, the Defendants and Plaintiffs agreed to continue working together to salvage the *Maravillas,* under an oral agreement.

43.     This verbal agreement consisted of MRR and Porter providing its expertise and labor, and continuing to salvage the *Maravillas* in return they would receive 25% of the recovered treasure (after the Bahamian Government took its share).  The Defendants agreed to continue paying the ongoing costs of the salvage.

44.     Allen and AEX falsely induced Porter and MRR to enter into this verbal contract knowing and intending that once significant treasure was found by Porter and MRR, and once Allen and AEX was given the benefit of Porter's opinions and strategy for greater recoveries, that Porter and MRR would be cast off and denied their 25% of the artifacts the parties had agreed to.

45.     While working under this oral contract, the Plaintiffs recovered substantial artifacts/treasure from the *Maravillas*.  The gross value of undivided treasure eligible to be divided exceeds $10 million dollars in artifact value.  These artifacts are being held and controlled by Allen and AEX.

46.     Allen and AEX have previously divided salvaged artifacts with MRR – notably in a prior division in 2021 where MRR's 30% share amounted to over $400,000.

47.     At the present time there are two "lots" of artifacts that the Bahamian government has approved for division between AEX and MRR.  The 25% share owed to MRR has a value of

approximately $1.6 million dollars.  AEX has refused to divide these artifacts with MRR as the parties' agreement required.

48.     There are also additional groups of artifacts MRR has recovered in its search, which the Bahamian government has not yet reviewed and determined which pieces it intends to keep. MRR's share of these remaining artifacts is estimated to be in excess of $500,000.

49.     In May of 2024 MRR, by and through Porter, prepared and presented to Allen, AEX and several of Allen's employees a detailed "Operational Plan" that sets forth Porter's opinions and conclusions on where the main portions of unfound treasure are located.  Essentially a "treasure map" to treasures worth over $1.5 billion dollars.

50.     Armed with Porter's "Operation Plan," Allen and AEX believed they no longer needed Porter's assistance in finding the remaining billion(s) of dollars in treasure and decided to unilaterally cancel the agreement for dividing the found treasure and refused to give MRR and Porter the agreed to 25% of found treasure that awaits division.

51.     While working under their oral contract to recover *Maravillas'* treasure, Porter and MRR compiled research for the location of a second sunken Spanish treasure galleon, the "Genovese."  The Genovese was the third largest ship in the *Maravillas* flotilla.  According to history, the Genovese carried 3,500,000 silver pesos intended for delivery to the Spanish King. The ship also contained significant undocumented gold and silver items belonging to wealthy passengers returning on the ship to Spain.

52.     Porter and MRR put his opinions and research about salvaging the Genovese in writing.  A multi-page "***Action Plan***" for salvaging the treasure of the Genovese was provided to Allen and AEX by Porter.  This "sea map" gives detailed charts and directions as to the location of this wreck site.  Porter had advised Allen and AEX that finding the Genovese would be the

"largest recovery" by treasure hunters in the last 40 years and clearly be the largest treasure discovery since the galleon Atocha.

53.     In July 2024 a meeting between the Plaintiffs and Defendants was held in Martin County, FL. During that meeting Allen notified Porter that he and MRR were not going to receive any further artifacts from future divisions.

54.     During that meeting Allen made false and defamatory statements to third parties regarding Porter; Allen falsely accused Porter of filing false expense claims with AEX and accusing him of using crew members whose salaries were being paid by AEX, to build Porter's vacation home in Freeport, Bahamas. Allen also made various false and disparaging statements about the honesty, skills, and trustworthiness of MRR, its officers and employees.

55.     Allen and AEX have hired away the Bahamian divers who had worked under Porter's direction on the *Maravillas* treasure trail.  Allen and AEX's plan and idea is to use the Porter trained divers and Porter's "Operation Plan 2024" and Genovese report to continue their treasure salvage operations for these two galleons and possibly other sunken galleons Porter disclosed to Allen.

56.     Allen in all meetings and communications with Porter and MRR, was acting in both his personal capacity and as an agent for AEX.

## **TRIAL BY JURY**

57.     The Plaintiffs request a trial by jury as to each of the following causes of action.

## BREACH OF CONTRACT AGAINST CARL ALLEN
## and ALLEN EXPLORATION, LLC

## COUNT I

58. Plaintiffs reallege Paragraphs 1 through 57 as though fully set forth herein.

59.     In 2021 Plaintiffs and Defendants had an oral agreement that MRR would receive 25% of all artifacts recovered from the *Maravillas*.

60.     Defendants Allen and AEX have failed to live up to and comply with this agreement.

61.      There was consideration for this bargain and agreement.

62.     Plaintiffs Porter and MRR have sustained damages because of this breach of this contract and agreement.

63.     The Defendants' actions against the Plaintiffs were the result of the Defendants' intentional misconduct, or their gross negligence as to the Plaintiffs.  The Defendants' misconduct included:

    a)  That the Defendants had actual knowledge of the wrongfulness of their conduct and;

    b)  The high probability that injury or damage to the Plaintiffs would result from that conduct and;

    c)  Despite that knowledge, the Defendants intentionally pursued that course of conduct and;

    d)  That the Defendants' conduct resulted in the Plaintiffs incurring injury or damage;

    e)  That at the time of injury to the Plaintiffs the Defendants had a specific intent to harm the Plaintiffs.

64.     That Carl Allen as the employer of Plaintiffs, or as a principal, officer or director of AEX, knowingly and actively engaged in a course of conduct that included his specific intent to harm the Plaintiffs by such conduct; and that he acted with malice against the Plaintiffs or engaged in fraudulent conduct against them.

65.     That AEX, its officers, directors, managers or agents knowingly condoned, ratified or consented to the conduct of said Carl Allen or his agents or employees which resulted in the harm to the Plaintiffs, or that AEX acted with malice against the Plaintiffs or engaged in fraudulent behavior against them.

66.     That Carl Allen and AEX were grossly negligent in their actions with the Plaintiffs, and that the Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard or indifference to the life, safety or rights of the Plaintiffs.

**WHEREFORE,** Plaintiffs requests a trial by jury and judgment against Defendants Allen and AEX for compensatory and punitive damages, together with costs of suit, expert costs, and any further relief as the Court may deem proper.

## COUNT II

## FRAUD IN THE INDUCMENT AGAINST CARL ALLEN  AND ALLEN EXPLORATION, LLC

67.     Plaintiffs reallege Paragraphs 1 through 66 as though fully set forth herein.

68.     Allen and AEX made a series of false statements of material facts when they induced and promised Porter and MRR in 2021 to divide and give a percentage of recovered artifacts to them. These false statements included the promise that the Plaintiffs would receive 25% of the treasure and artifacts from the material recovered from the *Maravillas*.

69.     Allen and AEX intended these false statements of material facts to be relied upon by Porter and MRR to engage their services to salvage the *Maravillas* and to cause Porter and MRR to put into writing and deliver to them detailed salvage plans for both the *Maravillas* and the *Genovese* galleons.

70.     Porter and MRR relied upon these materially false representations when it engaged in the salvage operations requested by the Defendants.

71.     Porter and MRR have sustained damages and injuries by acting in justifiable reliance on the false representations of the Defendants. The Defendants' actions against the Plaintiffs were the result of the Defendants' intentional misconduct or their gross negligence as to the Plaintiffs.  The Defendants' misconduct included:

   a)  That the Defendants had actual knowledge of the wrongfulness of their conduct and;

   b)  The high probability that injury or damage to the Plaintiffs would result from that conduct and;

   c)  Despite that knowledge, the Defendants intentionally pursued that course of conduct and;

   d)  That the Defendants' conduct resulted in the Plaintiffs incurring injury or damage;

   e)  That at the time of injury to the Plaintiffs the Defendants had a specific intent to harm the Plaintiffs.

72.     That Carl Allen as the employer of Plaintiffs, or as a principal, officer or director of AEX, knowingly and actively engaged in a course of conduct that included his specific intent to harm the Plaintiffs by such conduct; and that he acted with malice against the Plaintiffs or engaged in fraudulent conduct against them.

73.     That AEX, its officers, directors, managers or agents knowingly condoned, ratified or consented to the conduct of said Carl Allen or his agents or employees which resulted in the harm to the Plaintiffs, or that AEX acted with malice against the Plaintiffs or engaged in fraudulent behavior against them.

74.     That Carl Allen and AEX were grossly negligent in their actions with the Plaintiffs, and that the Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard or indifference to the life, safety or rights of the Plaintiffs.

**WHEREFORE,** Plaintiffs request a trial by jury and judgment against Defendants Allen and AEX for compensatory and punitive damages, together with costs of suit, expert costs, and any further relief as the Court may deem proper.

## COUNT III

## UNJUST ENRICHMENT AGAINST CARL ALLEN
## AND ALLEN EXPLORATION, LLC.

75.     Plaintiffs reallege Paragraphs 1 through 74 as though fully set forth herein.

76.     By refusing to divide recovered treasure with Plaintiffs as promised and agreed to, the Defendants have enriched themselves by well over $1.5 million dollars otherwise due and owed to the Plaintiffs.

77.     The Defendants have possession and control of the Plaintiffs' 25% share of treasure but have refused to tender it to the Plaintiffs after demands by the Plaintiffs.

78.     It would be unfair and inequitable for Defendants to keep the Plaintiffs' share of recovered treasure without paying the value thereof.   Plaintiffs have incurred damages as a result of the Defendants' actions.

79.    The Defendants have accepted and appreciated the benefit conferred on them by Plaintiffs.

80.    The Defendants' actions against the Plaintiffs were the result of the Defendants' intentional misconduct or their gross negligence as to the Plaintiffs.  The Defendants' misconduct included:

a)  That the Defendants had actual knowledge of the wrongfulness of their conduct and;

b)  The high probability that injury or damage to the Plaintiffs would result from that conduct and;

c)  Despite that knowledge, the Defendants intentionally pursued that course of conduct and;

d)  That the Defendants' conduct resulted in the Plaintiffs incurring injury or damage;

e)  That at the time of injury to the Plaintiffs the Defendants had a specific intent to harm the Plaintiffs.

81.    That Carl Allen as the employer of Plaintiffs, or as a principal, officer or director of AEX, knowingly and actively engaged in a course of conduct that included his specific intent to harm the Plaintiffs by such conduct; and that he acted with malice against the Plaintiffs or engaged in fraudulent conduct against them.

82.    That AEX, its officers, directors, managers or agents knowingly condoned, ratified or consented to the conduct of said Carl Allen or his agents or employees which resulted in the harm to the Plaintiffs, or that AEX acted with malice against the Plaintiffs or engaged in fraudulent behavior against them.

83.     That Carl Allen and AEX were grossly negligent in their actions with the Plaintiffs, and that the Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard or indifference to the life, safety or rights of the Plaintiffs.

**WHEREFORE,** Plaintiffs request a trial by jury and judgment against Defendants Allen and AEX for compensatory and punitive damages, together with costs of suit, expert costs, and any further relief as the Court may deem proper.

<u>**COUNT IV**</u>

<u>**QUANTUM MERUIT AGAINST CARL ALLEN AND ALLEN EXPLORATION, LLC**</u>

84.     Plaintiffs reallege Paragraphs 1 - 83 as though fully set forth herein.

85.     The Defendants requested and accepted the benefits of the work, action plans and treasure recovery made by Porter and MRR.

86.     The reasonable value of the work, labor and services, including detailed plans for locating the remaining treasure of the *Maravillas* and the Genovese galleon by MRR and Porter, is in excess of $1 million dollars, given the value of recovered treasure.

87.     The reasonable value of the "Operation Plan of 2024" for the *Maravillas* and *Genovese* Action Plan provided by Porter and MRR to Allen and AEX, is in excess of $20 million dollars.

88.     A reasonable person would expect to be paid for services and labor provided by Porter and MRR.

89.     The Defendants' actions against the Plaintiffs were the result of the Defendants' intentional misconduct or their gross negligence as to the Plaintiffs.  The Defendants' misconduct included:

a) That the Defendants had actual knowledge of the wrongfulness of their conduct and;

b) The high probability that injury or damage to the Plaintiffs would result from that conduct and;

c) Despite that knowledge, the Defendants intentionally pursued that course of conduct and;

d) That the Defendants' conduct resulted in the Plaintiffs incurring injury or damage;

e) That at the time of injury to the Plaintiffs the Defendants had a specific intent to harm the Plaintiffs.

90.    That Carl Allen as the employer of Plaintiffs, or as a principal, officer or director of AEX, knowingly and actively engaged in a course of conduct that included his specific intent to harm the Plaintiffs by such conduct; and that he acted with malice against the Plaintiffs or engaged in fraudulent conduct against them.

91.    That AEX, its officers, directors, managers or agents knowingly condoned, ratified or consented to the conduct of said Carl Allen or his agents or employees which resulted in the harm to the Plaintiffs, or that AEX acted with malice against the Plaintiffs or engaged in fraudulent behavior against them.

92.    That Carl Allen and AEX were grossly negligent in their actions with the Plaintiffs, and that the Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard or indifference to the life, safety or rights of the Plaintiffs.

**WHEREFORE,** Plaintiffs request a trial by jury and judgment against Defendants Allen and AEX for compensatory and punitive damages, together with costs of suit, expert costs, and any further relief as the Court may deem proper.

<u>**COUNT V**</u>

<u>**DEFAMATION AGAINST DEFENDANTS CARL ALLEN AND ALLEN
EXPLORATIONS, LLC**</u>

93.     Plaintiffs reallege Paragraphs 1 through 92 as though fully set forth therein.

94.     At a meeting in July 2024 in Martin County, Florida, Porter and MRR were advised by Allen and AEX, that there would be no further division of artifacts to Porter or MRR.  Also during that meeting, Allen acting individually and as an agent or officer or principal for AEX, made several false and defamatory allegations against and about Plaintiff Porter, accusing him of misappropriating money and services belonging to Allen and AEX, and committing other criminal acts.

95.     These statements were made to third parties by Allen and AEX in Martin County and in other parts of Florida.

96.     These statements were intentionally made and are false, and Allen knew it, but he made them in an effort to compel the Plaintiffs to abandon their claims to their 25% of treasure recovered by Plaintiff and MRR.

97.     As a result of these defamatory statements, the Plaintiff Porter has been injured and damaged.

98.     The Defendants' actions against the Plaintiffs were the result of the Defendants' intentional misconduct or their gross negligence as to the Plaintiffs.  The Defendants' misconduct included:

a)  That the Defendants had actual knowledge of the wrongfulness of their conduct and;

b)  The high probability that injury or damage to the Plaintiffs would result from that conduct and;

    c)  Despite that knowledge, the Defendants intentionally pursued that course of conduct and;

    d)  That the Defendants' conduct resulted in the Plaintiffs incurring injury or damage;

    e)  That at the time of injury to the Plaintiffs the Defendants had a specific intent to harm the Plaintiffs.

99.    That Carl Allen as the employer of Plaintiffs, or as a principal, officer or director of AEX, knowingly and actively engaged in a course of conduct that included his specific intent to harm the Plaintiffs by such conduct; and that he acted with malice against the Plaintiffs or engaged in fraudulent conduct against them.

100.    That AEX, its officers, directors, managers or agents knowingly condoned, ratified or consented to the conduct of said Carl Allen or his agents or employees which resulted in the harm to the Plaintiffs, or that AE acted with malice against the Plaintiffs or engaged in fraudulent behavior against them.

101.    That Carl Allen and AEX were grossly negligent in their actions with the Plaintiffs, and that the Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard or indifference to the life, safety or rights of the Plaintiffs.

**WHEREFORE,** Plaintiffs request a trial by jury and judgment against Defendants Allen and AEX for compensatory and punitive damages, together with costs of suit, expert costs, and any further relief as the Court may deem proper.

<u>**COUNT VII**</u>

<u>**VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE
PRACTICES ACT AGAINST DEFENDANTS CARL ALLEN AND ALLEN
EXPLORATIONS, LLC**</u>

102.     Plaintiffs reallege Paragraphs 1 through 101 as though fully set forth therein.

103.     Plaintiff Daniel Porter and MRR are "consumers" who fall within the protections of Florida Deceptive and Unfair Trade Practices Act (FDUTPA).

104.     This act (Chapter 501.201) is designed to protect the public and business enterprises from those engaging in unfair methods of competition or unconscionable deceptive or unfair acts or practices in the conduct of any trade or commerce (F.S. 501.202, 203).

105.     In a July 2024 meeting in Martin County, Florida between Daniel Porter, Carl Allen and Preston Paine – who was/is an officer of AEX, Carl Allen individually and as a principal or officer of AEX, made statements and decisions regarding his and AEX's contract with Daniel Porter and MRR, whom Porter was the managing partner of.

106.     These statements by Allen included:

a)  That Porter and MRR would not receive their contractually agreed to 25% and instead Porter and MRR, would receive "nothing" in artifacts from future divisions of artifacts from the *Maravillas*.

b)  When Plaintiff Porter told Allen that he would not accept Defendants' position and began to leave the meeting, Allen's final offer was to pay Porter and MRR 15% of those future divisions.   Porter rejected Allen's offer.

c)  Allen, in this meeting, accused Porter of stealing monies from him and AEX during his employment with AEX, and using AEX paid employees for labor to repair Porter's home.

d)   Allen in this meeting also accused Porter and MRR of not giving their best efforts to recover treasure/artifacts from the *Maravillas*.

107.   Allen and AEX have done this before to other individuals and companies. It has been an unfair business practice of Carl Allen and AEX to lure other companies and individuals to work for them to find and retrieve treasure from the *Maravillas,* and adjacent sunken vessels, by promising those companies and individuals a percentage of recovered treasure/artifacts, but after recoveries have been made to then renege on dividing the treasure as promised, and instead offering them a greatly reduced payment than what Allen and AEX owed these companies and individuals.

108.   Carl Allen and AEX have also repeatedly used its superior and vast financial position as an unfair bargaining tool in dealing with those the Defendants had contracts with by threatening to "tie-up" in lengthy and expensive litigation any person or company that threatened to bring suit to validate their claims that Allen and AEX violated division agreements or payment obligations.

109.   Since the July 2024 meeting, Allen and AEX have communicated numerous false and disparaging statements about Porter's ethics and honesty, as well as MRR's ethics, honesty and skills.  These false and disparaging claims by the Defendants have caused financial harm to both Porter and MRR, and has harmed MRR's goodwill and financial interests for future projects.

110.   The conduct of the Defendants in refusing to abide by Plaintiffs' contractual agreements, threatening to use its superior financial position to tie-up consumers in protracted litigation, and offering a substantially lower percentage of treasure division than what was agreed to, and defaming, and disparaging Plaintiffs'' honesty, skills and ethics amounts to deceptive acts or unfair business practices as prohibited by Florida law (FDUPTA).

111.    The Defendants' actions against the Plaintiffs were the result of the Defendants' intentional misconduct or their gross negligence as to the Plaintiffs.  The Defendants' misconduct included:

a)  That the Defendants had actual knowledge of the wrongfulness of their conduct and;

b)  The high probability that injury or damage to the Plaintiffs would result from that conduct and;

c)  Despite that knowledge, the Defendants intentionally pursued that course of conduct and;

d)  That the Defendants' conduct resulted in the Plaintiffs incurring injury or damage;

e)  That at the time of injury to the Plaintiffs the Defendants had a specific intent to harm the Plaintiffs.

112.    That Carl Allen as the employer of Plaintiffs, or as a principal, officer or director of AEX, knowingly and actively engaged in a course of conduct that included his specific intent to harm the Plaintiffs by such conduct; and that he acted with malice against the Plaintiffs or engaged in fraudulent conduct against them.

113.    That AEX, its officers, directors, managers or agents knowingly condoned, ratified or consented to the conduct of said Carl Allen or his agents or employees which resulted in the harm to the Plaintiffs, or that AEX acted with malice against the Plaintiffs or engaged in fraudulent behavior against them.

114.    That Carl Allen and AEX were grossly negligent in their actions with the Plaintiffs, and that the Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard or indifference to the life, safety or rights of the Plaintiffs.

**WHEREFORE**, the Plaintiffs Daniel Porter and Maritime Research and Recovery, LLC, request a trial by jury and judgment against the Defendants Allen and AEX for compensatory and punitive damages, together with costs of suit, attorneys' fees accorded by statute F.S. 501.2105, expert costs, and any further relief as the Court may deem proper.

**LAW OFFICE OF RICHARD D. KIBBEY, P.A.**
Attorney for the Plaintiffs
416 SW Camden Avenue
Stuart, FL 34994
Telephone:  (772)286-0023

**/s/ Richard D. Kibbey**
RICHARD D. KIBBEY
Florida Bar No. 25514
Email:   Kibbeylegal@gmail.com

**JASON M. WANDNER, P.A.**
Attorney for the Plaintiffs
100 N. Biscayne Blvd, Suite 1607
Miami, FL  33132
Telephone: (786)412-1505

**/s/ Jason M. Wandner**
JASON M. WANDNER
Florida Bar No. 0114960
Email:  Jason@wandnerlaw.com

**CERTIFICATE OF SERVICE**

*I HEREBY CERTIFY* that a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, on this 9th day of December 2024, and that the foregoing document is being served this day on all counsel of record identified on the attached Service List, via transmission of Notices of Electronic Filing generated by CM/ECF:

**CHRISTOPHER F. LANZA, P.A.**
Attorneys for Defendants Carl Allen & Allen Exploration, LLC
290 NW 165th Street, P-600
Miami, FL 33169
Phone: (305) 956-9040
Email: cfl@lanzalaw.com