IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

FT. PIERCE DIVISION

CASE NO. 24-14336-CIV-MARTINEZ/MAYNARD

DANIEL PORTER, Individually, and
MARITIME RESEARCH & RECOVERY, LLC,

Plaintiffs,

v.

CARL ALLEN, Individually, and
ALLEN EXPLORATION, LLC,

Defendants.
_____/

**DEFENDANTS' MOTION FOR TERMINATING SANCTIONS
AND/OR SANCTIONS UNDER 28 U.S.C. § 1927**

Defendants Carl Allen and Allen Exploration, LLC ("AEX") (collectively "Defendants"),
by and through undersigned counsel, respectfully move this Court for an order imposing
terminating sanctions against Plaintiffs Daniel Porter and Maritime Research & Recovery, LLC
("MRR") (collectively Plaintiffs"), and for sanctions under 28 U.S.C. § 1927 against Plaintiffs'
counsel, Richard Kibbey and Jason Wandner.

Plaintiffs and their counsel have engaged in egregious misconduct, including making
false representations about the merits of their claims, misrepresenting Attorney David
Concannon's representation status, and filing numerous frivolous motions designed to harass
Defendants and unreasonably prolong these proceedings.  Plaintiffs and their counsel have
engaged in a sustained pattern of bad faith conduct, including perpetrating a fraud upon the
Court, knowingly misrepresenting material facts, and unnecessarily multiplying proceedings.

This conduct warrants the most severe sanctions available under the Court's inherent authority and 28 U.S.C. § 1927.  In support of their motion, Defendants state as follows:

## I.   **FACTUAL BACKGROUND**

1.      This is an action arising out of the parties' salvage of the Spanish galleon *Nuestra Señora de las Maravillas* ("*Maravillas*"), which foundered off the Bahamas in 1656.  *See* D.E. 1-6 (Compl.) at ¶¶ 10, 11, 19-26, 29-40.  Plaintiffs initially filed their Complaint in state court on September 11, 2024, alleging that Defendants violated an oral agreement made in 2020 to divide a portion of Defendants' share of the artifacts recovered from the *Maravillas* with Plaintiffs.  *Id.* at ¶¶ 11, 29-35, 38, 40 and 49.

2.      Plaintiffs' Complaint does not truthfully state that their relationship with Defendants was actually based on two written agreements the parties entered into on November 13, 2019, a "Services Agreement" (D.E. 1-7) that AEX terminated in writing on August 18, 2021 (D.E. 7-03) and never renewed, and a "Confidentiality Agreement" (D.E. 7-1) that remains in effect.  Both agreements have forum selection clauses stating the parties agree to litigate this case exclusively in Dallas, Texas.  *See* D.E. 1-7 at ¶ 8(b) and ECF No. 7-1 at ¶ 8.

3.      Plaintiffs' failure to disclose their written agreements in the Complaint was not an accident.  Texts messages between Porter, Managing Director of MRR, and Kibbey reveal that Porter provided copies of the written agreements to Kibbey on September 6, 2024.  *See* Text messages, attached hereto as Exhibit A, at 48.[1]  Thereafter, Kibbey sought information to craft allegations that would support venue in Martin County, Florida, *see* Ex. A at 29-30 and 39-47, ignoring the forum selection clauses and the U.S. Supreme Court's unanimous precent in *Atlantic*

---

[1] Plaintiffs produced these communications to Defendants on January 27, 2025.  Plaintiffs' production was voluntary, intentional, and Plaintiffs have never requested the return of these communications.

*Marine Construction Co. v. United States District Court for Western District of Texas,* 571 U.S. 49 (2013).

4.       Plaintiffs and their counsel intentionally filed this case in Martin County, Florida to inconvenience and burden the Defendants, they have aggressively opposed Defendants' motion to transfer the case to Texas, and they have continuously engaged in costly and burdensome discovery battles and motion practice in Florida for the sole purpose of harassing Defendants and their counsel, and significantly adding to the cost of defending this litigation. *See* D.E. 13, 15, 20, 24, 26, 28, 29, 32, 33 and 35.

5.       After the case was properly removed to federal court on October 10, 2024, Defendants asserted counterclaims for breach of the two written contracts made in November 2019, fraud in the inducement, replevin and unjust enrichment.  *See* D.E. 7 (Answer) at ¶¶ 11, 29-35, 38, 40, 45 and 49; (Counterclaims) at ¶¶ 12-18.  Defendants flatly denied Plaintiffs' allegations that there ever existed an oral agreement between the parties to divide a portion of Defendants' share of the artifacts recovered from the *Maravillas* with Plaintiffs.  *Id.* at ¶¶ 11, 29-32, 43, 46, 52-55, 63 and 83.

6.       When Plaintiffs and their counsel filed this case on September 11, 2024, they already knew Plaintiffs had never entered into any oral agreements to share artifacts with the Defendants after August 18, 2021.  In fact, in a testy exchange of messages just six days earlier, on September 5, 2024, Porter admitted to Carl Allen:

> A couple things I need to point out first we never have had a signed charter agreement which we attempted yesterday. After discussing with Preston, the percentage split of 21 and 22 I told Preston that I was going to have to run this up the ladder, and that the whole deal was not acceptable. Mike and Art are the majority members and vessel owners. I have to talk to Mike McDowell and Art about this situation. We have also never had a formal offer on the division, and you guys agreed to pay the balance of your past due bills. before we even started this. I told Preston that I was doing this to show good faith on my side. You guys

would pay your rears to show good faith on your side. I hope we can work this out and have an equitable split and walk away as friends.

*See* WhatsApp group messages, attached hereto as Exhibit B.

7.      At the time, the parties were trying to work out an agreement for AEX to charter two vessels owned by separate companies that are also owned by the principal shareholders in MRR. These men, Porter, Art Schweizer and Michael McDowell, were trying to impose as a condition of the new charter that AEX retroactively divide artifacts it had recovered from the *Maravillas* since AEX had terminated the 2019 "Services Agreement" with MRR in 2021. *Id.* Schweizer admonished Mr. Allen, stating:

> The conditions for the agreement, including the payment of past debts and finalization of the division structure, have not been met… A deal isn't complete until it is signed by both parties and all side conditions must be met.

Carl Allen rejected this effort, stating: "After a lengthy conversation one thing we find interesting. In over three years of termination not one word of protest at all of the letter." *Id.*

8.      Porter and Schweizer's statements directly contradict many of the allegations the Plaintiffs made in the Complaint (D.E. 1-6) they filed just six days later, including:

a. **Paragraph 11:** *"Defendants agreed to a charter arrangement with Plaintiffs for the use of vessels in the maritime salvage operations."*

**Contradiction:** Schweizer explicitly states that no charter agreement was completed because the required conditions were never met.

b. **Paragraph 19:** *"Plaintiffs and Defendants entered into an agreement whereby Plaintiffs would provide vessels and expertise, and Defendants would provide funding and logistical support, with agreed-upon shares of recovered assets."*

**Contradiction:** Schweizer states that the division agreements were never finalized as the conditions remained unresolved.

c. **Paragraph 26:** *"Defendants confirmed their agreement to the charter terms and agreed to pay outstanding amounts owed before proceeding with further operations."*

**Contradiction:** Schweizer explicitly says that neither of the conditions for completing the agreement (past dues and division issues) had been resolved, and thus no charter agreement existed.

d. **Paragraph 34:** *"Plaintiffs performed under the agreement by making vessels available for Defendants' operations, expecting compliance with agreed-upon financial and operational terms."*

**Contradiction:** Schweizer's message asserts that without a signed agreement and conditions being met, there was no binding obligation on either side.

e. **Paragraph 40:** *"At all times, Defendants acknowledged their obligations under the agreement and agreed to comply with the agreed terms."*

**Contradiction:** Schweizer's statement shows that Defendants disputed whether an agreement was even finalized.

f. **Paragraph 45:** *"Defendants' refusal to honor their agreement and complete the agreed-upon charter obligations constitutes a breach of contract."*

**Contradiction:** Schweizer's statement makes clear that no legally binding contract was in place due to unfulfilled preconditions.

9.      The Complaint asserts that an agreement existed between the parties, including binding obligations for vessel charter and profit-sharing.  However, Schweizer and Porter's statements directly refutes the existence of a completed and binding agreement, noting that key conditions remained unresolved and that no contract was signed.  This contradiction shows that Plaintiffs' claims for breach of contract and related allegations are based on an intentional misrepresentation of the actual state of agreements between the parties.

10.     The documents Plaintiffs recently produced in discovery show Plaintiffs' motivation for misrepresenting the truth and suing Carl Allen and AEX: Porter and MRR have been defrauding investors in MRR for years.  Even though AEX has paid all of the costs for the recovery of artifacts from the *Maravillas* (D.E. 1-7 at Ex. B), and the principals in MRR knew the company did not have any right to receive a share of AEX's artifacts since at least August 18, 2021, *see* Ex. B, MRR continued to solicit investments from individuals by promising them a

share of artifacts currently being recovered from the *Maravillas* and other shipwrecks by AEX. *See* Porter text messages to MRR investors in 2024, attached hereto as Exhibits C and D.

11.     Similarly, in an MRR investor update letter from January 1, 2024, Plaintiffs explicitly assured investors that "Allen Exploration is actively negotiating with the government to get this division completed" and "as soon as Allen Exploration has their division with The Bahamian government, they are prepared to divide with us quickly so we can do our distributions." *See* MRR Investor Update, attached here to as Exhibit E.  However, this representation is directly contradicted by Plaintiffs' internal communications, especially the messages between Schweizer, Porter and Carl Allen in September 2024, where MRR's principals admitted there is no agreement between MRR and AEX to divide artifacts.  Ex. B.  *See also* Ex. D ("Hey Bruce, the distribution with the government has been completed.  And now we're just in negotiation with Carl Allen on our division. I can't give you an exact ETA but we are working on it.  Art is here now.").  Plaintiffs have knowingly concealed this fact from their investors, falsely suggesting that a binding agreement existed and they had secured a share of Defendants' recovered artifacts for distribution.

12.     If Plaintiffs have been defrauding investors by promising them a share of artifacts they know they have no agreement with AEX to receive, this is not Defendants' problem. Plaintiffs can discuss this issue with Florida's Statewide Prosecutor, the F.B.I., or their investors' attorneys.  The solution to Plaintiffs' problem is not to commit fraud upon this Court by filing and continuing a meritless lawsuit against Defendants so the Plaintiffs can avoid prosecution or civil claims filed by their investors.

13.     One of most egregious examples of Plaintiffs' vexatious litigation is their ongoing persecution of Defendants' counsel, David Concannon.  Plaintiffs knowingly misrepresented

Attorney Concannon's representation status, repeatedly claiming in multiple motions, a proposed Amended Complaint and discovery requests that Mr. Concannon represented MRR; therefore, he should be disqualified from representing AEX and Mr. Allen, the attorney-client privileged has been waived, and all of Mr. Concannon's communications and invoices should be produced in discovery. Defendants and Mr. Concannon have been battling for months to clear Mr. Concannon's name and defeat Plaintiffs' claims. Now, newly produced evidence shows the mendacity of Porter and Plaintiffs' counsel in waging this tactical jihad.

14.     Specifically, on October 29, 2024, one day before the filing of Plaintiffs' Motion to Disqualify Attorney Concannon, Mike McDowell, the largest shareholder in MRR and the individual who had discussions with Mr. Concannon and Porter, explicitly stated in a text message to Porter that he asked to be passed to Attorneys Richard Kibbey and Jason Wandner:



*See* Ex. A at 26-27.

15.     Porter and Plaintiffs' counsel completely ignored McDowell's request.  For example, in Plaintiffs' Motion to Disqualify Attorney Concannon, filed just one day after McDowell warned Porter, Kibbey and Wandner not to misstate the truth and file a misleading document, the Plaintiffs made the following false and misleading statements:

a. **Paragraph 4 –** "Secondly, Attorney Concannon is conflicted in this matter and thus disqualifiable according to the Rules Regulating the Florida Bar. Specifically, Rule 4-1.9 of the Rules Regulating the Florida Bar. Rule 4-1.9 provides, in pertinent part, that '[A] lawyer who has formerly represented a client in a matter shall not thereafter ... represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent ... or reveal information relating to the representation.' (See attached affidavits from Plaintiff Daniel Porter and MRR principal Michael McDowell, Exhibits A and B to this Motion)."

b. **Paragraph 6** – "MRR and its principals believed that Attorney Concannon was representing both MRR and Allen Exploration."

c. **Paragraph 7** – "Given that at the time MRR and Allen Exploration were working together and had a joint interest in resolving the Spence situation, Attorney Concannon was actively advising MRR, the direct target of the Spence accusations, on legal defenses and strategies in order to defend the allegations."

d. **Paragraph 8** – "He also was the person who ultimately devised the strategy that MRR relied upon to protect itself from the allegations."

e. **Paragraph 9** – "Throughout that period of time, MRR and its principals believed that Attorney Concannon was representing both MRR and Allen Exploration."

f. **Paragraph 10** – "In order to prevail on a motion to disqualify under Rule 4-1.9, the movant must establish: (i) an attorney-client relationship existed…"

g. **Paragraph 11** – "It is anticipated that Attorney Concannon will argue that he only represented Allen Exploration or was not acting as an Attorney for MRR during these actions because he was never retained or paid by MRR and he was attempting to resolve the issue on behalf of both Allen Exploration and MRR. The very legal advice given to MRR by Attorney Concannon directly relates to allegations he is now bringing as Counsel for Allen Exploration against MRR."

h. **Paragraph 13** - "The first issue is whether there was an attorney-client relationship between the former client and counsel…"

    i.  **Paragraph 15** - "Attorney Concannon was heavily involved in the formulation of the oral contract now in dispute in addition to acting on behalf of MRR in the Spence matter."

*See* D.E. 15 (Pls.' Mtn. to Disqualify) at ¶¶ 4, 6-11, 13 and 15.

16.    Plaintiffs made similar false statements about Attorney Concannon in filings over a four-month period, up until last Thursday!  *See* D.E. 26 (Pls.' First Mtn. to Amend Complaint) at ¶¶ 40 ("The Defendants retained Attorney David Concannon to provide legal advice to them and Plaintiffs on how to defend Spence's claims to the *Maravillas* salvage."), 42 ("In furtherance of the strategy created by Concannon, the Defendants and Plaintiffs agreed to continue working together to salvage the *Maravillas*, under an oral agreement."); D.E. 29 (Pls.' Mtn. to Compel) at ¶¶ 8(a) ("From at least June 2020 through November 25, 2023, Concannon was providing both legal and business advice to all parties with the knowledge and consent of each party (ECF 20, Pages 2-24)."); D.E. 32 (Pls.' First Mtn. for Sanctions) at ¶¶ 4, 5, 13, 14(a) and (b) (falsely claiming that Defendants made only general and "boilerplate" attorney-client privilege objections and moving to strike Defendants' Motion to Transfer and overrule Defendants' discovery objections); and D.E. 35 (Pls.' First Mtn. for Sanctions) at ¶ 12.

17.    Mr. Concannon has thoroughly refuted these claims in two sworn affidavits he filed in this Court.  *See* D.E. 18-1 and 23-2.  But, Plaintiffs' conscious retelling of the "Big Lie" – that is, their audacious and false claim that MRR and Porter were represented by Attorney Concannon – in the hope that a lie repeated often enough eventually will be believed as true, has taken its financial and prejudicial toll.

18.    Despite knowing the falsity of their claim, Plaintiffs and their counsel repeatedly asserted that Attorney Concannon represented and advised them, and he was even paid to do so, despite clear evidence to the contrary.  This falsehood, constantly repeated in numerous motions

and discovery requests, was intended to mislead the Court and circumvent the protections of attorney-client privilege.  Such tactics not only distort the facts but also undermine the integrity of these proceedings, Defendants have been significantly deprived of the representation of their longtime counsel, while Mr. Concannon's honesty and character have been repeatedly attacked.

19.     Plaintiffs have built their entire claim about the existence of an oral agreement upon their blatant lie that they were not only represented by Mr. Concannon but he was also the architect of the parties' contractual relationship after AEX terminated MRR in August 2021: "In furtherance of the strategy created by Concannon, the Defendants and Plaintiffs agreed to continue working together to salvage the *Maravillas*, under an oral agreement."  D.E. 26 at ¶ 42.

20.     The allegation that the parties even had an oral agreement is contradicted by Porter and Schweizer in their text exchange with Carl Allen on September 6, 2024, *see* Ex. B, and the allegation that Attorney Concannon represented or advised MRR is contradicted by McDowell, *see* Ex. A at 48, and Mr. Concannon.  As Mr. Concannon testified in his affidavit, he never discussed the topic of whether Porter or any entity he and McDowell were affiliated with would receive artifacts from AEX or Mr. Allen after the 2019 Services Agreement was terminated on August 18, 2021; he was not involved in creating any contractual arrangements between the parties on or after August 18, 2021; and, as far as he knew, the parties never reached any type of agreement on the division of artifacts after MRR was terminated.  *See* D.E. 18-1 at ¶¶ 10, 15, 16, 20, 21, 24-27.  This is consistent with what Porter and Schweizer stated to Carl Allen less than one week before this lawsuit was filed: that the parties had never reached an agreement on the division of artifacts.  Ex. B.  Most importantly, this is information that Attorneys Kibbey and Wandner have always had in their possession, but they have steadfastly ignored it in the filing and continuation of every aspect of this case.

21.     It is clear that every filing Plaintiffs and their counsel have made is tainted by untruthfulness, bad faith, willful misbehavior and vexatious conduct.  The only equitable relief the Court can impose is terminating sanctions and the imposition of fines against Attorneys Kibbey and Wandner for unreasonably multiplying the proceedings and pursuing vexatious litigation.  Accordingly, Defendants hereby move for the imposition of such sanctions.

## **MEMORANDUM OF LAW**

## II.     **LEGAL STANDARDS**

### A.     **Inherent Authority to Issue Terminating Sanctions**

The Court has inherent authority to impose sanctions for bad-faith litigation conduct, including dismissal of a case.  In *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991), the Supreme Court held that federal courts have inherent power to sanction parties who act "in bad faith, vexatiously, wantonly, or for oppressive reasons," including when a party "practices a fraud upon the court."  The Court also has the inherent authority to control the proceedings before it, which includes the authority to impose "reasonable and appropriate" sanctions.  *See Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1545 (11th Cir. 1993).  In determining appropriate sanctions, courts have the inherent power to impose sanctions on parties, lawyers, or both.  *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006).

Imposing sanctions under the Court's inherent power requires a finding that a party acted in bad faith.  *Martin v. Automobile Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002) (per curiam).  "Bad faith exists when the court finds that a fraud has been practiced upon it, or that the very temple of justice has been defiled, . . . or where a party or attorney knowingly or recklessly raises a frivolous argument, delays or disrupts the litigation, or hampers the enforcement of a court order."  *Allapattah Servs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344,

1373 (S.D. Fla. 2005) (citing *Chambers*, 501 U.S. at 45-46); *Barash v. Kates*, 585 F. Supp. 2d 1347, 1362 (S.D. Fla. 2006) (same).  "In determining whether sanctions should be awarded under the bad faith standard, 'the inquiry will focus primarily on the conduct and motive of a party, rather than on the validity of the case.'"  *Barash*, 585 F. Supp. 2d at 1362 (quoting *Rothenberg v. Sec. Mgmt. Co., Inc.*, 736 F.2d 1470, 1472 (11th Cir. 1984)).  Bad faith exists when: (1) when fraud has been committed on the Court; (2) when a party delays or disrupts the litigation, or hampers the enforcement of a court order; or (3) when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.  *Id*.

### B.      Sanctions Under 28 U.S.C. § 1927

Under 28 U.S.C. § 1927, an attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Courts have held that "bad faith conduct that multiplies proceedings unnecessarily" is sanctionable under this statute.  *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991).  Unreasonable and vexatious conduct under § 1927 is conduct that "is so egregious that it is tantamount to bad faith."  *See Hudson v. Int'l Computer Negotiations, Inc.*, 499 F.3d 1252, 1262 (11th Cir. 2007).  "The standard is an objective one turning 'not on the attorney's subjective intent, but on the attorney's objective conduct.'"  *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1282 (11th Cir. 2010) (*citing Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1236 (11th Cir. 2007)).  A finding of bad faith is likewise necessary to impose a sanction under the Court's inherent authority.  *See Chambers*, 501 U.S. at 46; *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998).  "In practice, 'the only meaningful difference between an award made under § 1927 and one made pursuant to

the court's inherent power is ... that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both.'" *United States ex rel. Bumbury v. Med-Care Diabetic & Med. Supplies, Inc.*, 102 F. Supp. 3d 1350, 1352-53 (S.D. Fla. 2015) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2nd Cir.1986)).  Notwithstanding, the Court should ordinarily rely on the rules or statute when they provide an adequate sanction for the behavior in question.  *See Chambers*, 501 U.S. at 50.

## III.    ARGUMENT

### A.    Plaintiffs' Conduct Warrants Terminating Sanctions

Plaintiffs' pattern of misconduct includes repeated misrepresentations to the Court, false accusations regarding Attorney Concannon, and vexatious motion practice.  This misconduct "has interfered with the judicial system's ability to adjudicate this matter impartially" and warrants dismissal as a sanction.  *McCarthy v. Am. Airlines, Inc.*, No. 07-61016-CIV, 2008 WL 2517129, at *2 (S.D. Fla. Jun. 23, 2008).  Before a case-terminating sanction may be entered, a court must find: (1) that Defendant acted willfully or in bad faith; (2) that Plaintiff was prejudiced by Defendant's conduct; and (3) that lesser sanctions would not serve the goals of punishment and deterrence.  *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 131 (S.D. Fla. 1987).  As discussed below, the evidence and Plaintiffs own documents establish these three conditions by clear and convincing evidence.

#### 1.    Willfulness and Bad Faith

The bad faith conduct of Plaintiffs and their counsel includes:

- Plaintiffs committed a fraud on the Court by knowingly misrepresenting the factual and legal basis for their claims.  Plaintiffs' alleged fraudulent inducement and breach of contract based on factual allegations they knew to be false, misleading and contradicted by their own statements to MRR investors and to Carl Allen.

- Plaintiffs' insistence on engaging in costly and burdensome litigation and discovery battles in Florida despite knowing this case should be litigated in Texas under the parties' written agreements.  Plaintiffs' decision to litigate in Florida, rather than the proper venue of Texas, and their ongoing efforts to thwart a transfer of this action to the venue they contractually agreed upon, serves to delay the proceedings, needlessly increase cost, and obstruct judicial scrutiny of Plaintiffs' misrepresentations.

- By bringing baseless claims against Defendants and engaging in extensive, costly litigation, Plaintiffs are attempting to cover up their fraudulent fundraising efforts while improperly leveraging this Court's authority to pressure Defendants into a settlement so they can obtain artifacts to pay MRR's investors.

- Plaintiffs knowingly misrepresented Attorney David Concannon's representation status. Plaintiffs themselves have internal communications acknowledging Mr. Concannon did not represent them.

- Plaintiffs falsely represented to the Court that Attorney Concannon should be disqualified due to an alleged prior representation, and the Defendants had waived the attorney-client privilege due to Mr. Concannon's dual representation of Plaintiffs and Defendants.

- Plaintiffs filed baseless and bad-faith memoranda and motions to unreasonably multiply these proceedings, harass and delay, including their motion to disqualify Attorney Concannon, motion for leave to file an amended complaint, memoranda in opposition to Defendants' motion to transfer, and Plaintiffs' opposition to Defendants' motion for leave to file a sur-reply brief on the disqualification issue.

- Engaging in discovery tactics designed to burden and harass Defendants.

Any of these acts, by themselves, could be grounds to find bad faith, but the breathtaking combination of all of these misdeeds is what justifies the imposition of terminating sanctions. Some specific examples, by themselves, include:

### (a)    Providing False Testimony

Providing false testimony constitutes a sufficient basis to enter case-terminating sanctions.  *Cap. L.P. v. Heyden Enters. LLC*, 2024 U.S. Dist. LEXIS 234079 *17-18 (S.D. Fla. Dec. 30, 2024) (citing *Anz Advanced Techs. v. Bush Hog, LLC*, 2011 WL 814663, at *11 (S.D. Ala. Jan. 26, 2011), report adopted, 2011 WL 814612 (S.D. Ala. Mar. 3, 2011); *see also Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1181 (10th Cir. 2009) ("[W]hen a party ... submits

false evidence, it imposes substantial burdens not only on the opposing party, but also on the judicial system itself, as the extent and relevance of the fabrication are investigated.")).

Here, McDowell's text requesting that the lawyers submit truthful affidavits, *see* Ex. A at 26-27, and the lawyers' intentional failure to do so, clearly shows that Porter and Plaintiffs' counsel willfully submitted false testimony on the topics of (1) whether Attorney Concannon represented and advised MRR, and (2) Mr. Concannon was the creator of a new contractual arrangement for MRR and Porter to receive a share of artifacts.  D.E. 15-1 and 20-1 at ¶¶ 13-14. Porter's intentional misrepresentations under oath were compounded by Plaintiffs' counsels' repeated, knowing insertion of these false statements into numerous motions and memoranda in support of these motions.  D.E. 15, 20, 24, 26, 29 and 32.  Plaintiffs and their counsel have knowingly embarked on a campaign to deprive Defendants of their longtime counsel since the outset of this case, disparaging the attorney and greatly hampering the Defendants' ability to defend against Plaintiffs' baseless claims.  These filings were made over the course of several months, each one building on the misrepresentations in the prior filing.  Plaintiffs have even opposed Defendants' motion to file a sur-reply brief and a supplemental affidavit to refute the false statements Porter and his counsel made about Attorney Concannon, urging the Court to close the briefing and hold a hearing where they could question Mr. Concannon about the advice he gave to his client (thus disqualifying him from acting as an advocate for his actual clients). D.E. 24.  Plaintiffs' actions have substantially burdened opposing counsel and the Court by perpetuating lies that were exposed after Plaintiffs produced their internal communications, after significant time and energy were spent by Defendants' counsel to present the truth and this Court to receive it.  *See Garcia*, 569 F.3d at 1181 ("[W]hen a party ... submits false evidence, it imposes substantial burdens not only on the opposing party, but also on the judicial system itself,

as the extent and relevance of the fabrication are investigated."). Plaintiffs' fabrication of critical evidence and false statements constitute bad faith and, indeed, a "clear pattern" of "contumacious conduct" sufficient to warrant dismissal with prejudice. *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1338 (11th Cir. 2005); *Oniha v. Delta Air Lines*, 2022 U.S. App. LEXIS 5192 *5-6 (11th Cir. Feb. 25, 2022). Furthermore, the misrepresentation of material facts concerning both the existence of an agreement between the parties and the scope of Mr. Concannon's representation shows a pattern of bad faith behavior designed to deceive the Court and unnecessarily multiply these proceedings, which is also sanctionable under § 28 U.S.C. 1927.

### (b)       Improper Forum Selection and Evasion of Transfer to Texas

Plaintiffs' insistence on engaging in costly and burdensome litigation and discovery in Florida is especially egregious given that they know this case should be litigated in Texas under the parties' written agreements. Both the "Services Agreement" and "Confidentiality Agreement" contain forum-selection clauses requiring all disputes be litigated in Texas. D.E. 1-7 at ¶ 8(b) and ECF No. 7-1 at ¶ 8. Plaintiffs had actual possession of these agreements and provided copies to their attorney before they filed their Complaint—they cannot claim ignorance. Ex. A at 48. Then, Attorney Kibbey knowingly withheld the existence of the parties' written agreements signed in 2019 from the Court when he drafted and filed Plaintiffs' Complaint, falsely alleging that the parties' relationship was based on an oral agreement entered into in 2020 and amended thereafter. D.E. 1-6 at ¶¶ 11, 29-35, 38, 40 and 49. Now, Plaintiffs are deliberately delaying a ruling on transfer. Instead of waiting for a ruling on the motion to transfer, Plaintiffs continue to file unnecessary motions to compel and for sanctions. This tactic is a deliberate

attempt to entrench litigation in Florida and increase Defendants' costs, despite knowing that venue is improper.

### (c)   Pursuing False Claims to Cover Up Fraud

Plaintiffs committed a fraud on the Court by knowingly misrepresenting the factual and legal basis for their claims, likely to extract artifacts from Defendants to pay investors in MRR that Plaintiffs had defrauded.  A fraud upon the Court occurs where a party "sentiently sets in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense."  *Aoude v. Mobil Oil Corp*., 892 F.2d 1115, 1118 (1st Cir. 1989).  This is exactly what happened here.

Porter and MRR have been defrauding the investors in MRR.  Even though AEX has paid all of the costs for the recovery of artifacts from the *Maravillas* (D.E. 1-7 at Ex. B), and the principals in MRR knew the company did not have any right to receive a share of AEX's artifacts since at least August 18, 2021, *see* Ex. B, MRR continued to solicit investments from individuals by promising them a share of artifacts AEX was currently recovering from the *Maravillas* and other shipwrecks.  *See* Exs. C and D.  Similarly, Porter assured MRR's investors that "Allen Exploration is actively negotiating with the government to get this division completed" and "as soon as Allen Exploration has their division with The Bahamian government, they are prepared to divide with us quickly so we can do our distributions."  *See* Ex. E.  However, Plaintiffs' lack of an agreement to divide artifacts with Defendants is clearly demonstrated by their internal communications, especially the messages between Schweizer, Porter and Carl Allen in September 2024, where MRR's principals admitted there is no agreement between MRR and Defendants to divide artifacts.  Ex. B.  *See also* Ex. D ("Hey Bruce, the distribution with the

government has been completed.  And now we're just in negotiation with Carl Allen on our division. I can't give you an exact ETA but we are working on it.").  Plaintiffs have knowingly concealed the lack of an agreement from their outside investors, falsely suggesting that a binding agreement existed and they had secured a share of recovered artifacts for distribution.  Now, Plaintiffs have tried to cover up their defrauding of MRR's outside investors by filing and continuing a meritless lawsuit against Defendants.  Plaintiffs' knowing and intentional fraud, coupled with their bad-faith litigation tactics, warrants the most severe sanctions available to this Court, including dismissal of their claims in their entirety.

### 2.      Prejudice

Plaintiffs' actions have clearly prejudiced Defendants.  Plaintiffs and their counsel intentionally and repeatedly submitted false declarations, motions, memoranda and discovery to burden and harass Defendants, to avoid a transfer and deprive them of Defendants counsel.  The Court's docket is now clogged with undecided motions and the case should be in Texas. Plaintiffs' actions caused both Defendants and this Court to expend immense time and resources to get to the truth of the matter, thus depriving Defendants "of the truth-finding judicial process to which it is entitled" through litigation.  *See Sprint Sols., Inc. v. Fils-Amie*, 83 F. Supp. 3d 1290, 1298 (S.D. Fla. 2015).  This conduct has caused Defendants' legal fees to skyrocket and the litigation is essentially stalled.  Moreover, prejudice "can consist of having to 'vigorously attempt [ ] to pry ... information' from the deceitful party . . . .," which is exactly the case here. *Forsberg v. Pefanis*, 634 F. App'x 676, 680 (11th Cir. 2015) (quoting *Jaffe v. Grant*, 793 F.2d 1182, 1190 (11th Cir. 1986)).  The undisputed evidence is more than sufficient to demonstrate prejudice.

### 3.      Consideration of Lesser Sanctions

Given the extent of Plaintiffs' misconduct, terminating sanctions are warranted and lesser sanctions will not suffice. This conclusion is based on Plaintiffs' repeated false statements to the Court, which stretch across multiple filings and were revealed only by Plaintiffs' fortuitous production of their internal communications. Such severe sanctions are particularly appropriate here not only to "penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Cap. L.P.*, 2024 U.S. Dist. LEXIS 234079 *25-26 (quoting *Mathews v. Moss*, 2011 WL 13134350, at *3 (S.D. Fla. Sept. 13, 2011), *aff'd*, 506 F. App'x 981 (11th Cir. 2013)). Absent severe sanctions, litigants like Porter and MRR, and unscrupulous counsel like Attorneys Kibbey and Wandner, would be incentivized to repeatedly submit false statements to the reviewing court in an attempt to fabricate liability. As this Court recently found: "The penalty for such conduct must exceed simply restoring the harmed party to the same position it would be in had the false information not been offered in the first place. Put simply, the fact that the truth eventually came out cannot spare [the recalcitrant litigant] from appropriate consequences of promulgating and standing by false testimony for months. Such conduct warrants the entry of severe sanctions." *Id*. (*citing* Mathews, 2011 WL 13134350, at *3 (entering case-terminating sanctions based on affirmative actions to submit false evidence)).

The Court also has the inherent authority to strike a party's pleading. *Forsberg v. Pefanis*, 634 F. App'x 676, 679 (11th Cir. 2015) (affirming district court's striking of answer based on submission of false evidence). The extreme level of Plaintiffs' misconduct fundamentally compromises the "truth-finding" function of the judicial process and any result short of striking Plaintiffs' Complaint would not be sufficient to adequately remediate the serious

ramifications of Plaintiffs' misconduct. *See Cap. L.P.*, 2024 U.S. Dist. LEXIS 234079 *28 (*citing Sprint Sols., Inc.*, 83 F. Supp. 3d at 1298).

**B.      Sanctions Under 28 U.S.C. § 1927 Are Appropriate**

As demonstrated herein, Plaintiffs' counsel has unreasonably and vexatiously multiplied these proceedings by filing meritless motions, making baseless accusations, and misrepresenting material facts. Four months have elapsed in a case set to go to trial in August, and Plaintiffs' counsel have frustrated the truth-finding process at every opportunity. The Court should require Plaintiffs' counsel to personally satisfy Defendants' attorneys' fees and costs incurred in addressing these abuses.

**IV.      CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court:

1.      Dismiss Plaintiffs' claims in their entirety as a sanction for fraud upon the Court and bad-faith litigation conduct;

2.      Impose monetary sanctions against Plaintiffs and their counsel under 28 U.S.C. § 1927 for unreasonably and vexatiously multiplying these proceedings;

3.      Award Defendants their reasonable attorneys' fees and costs incurred in responding to Plaintiffs' bad-faith filings; and

4.      Grant such further relief as the Court deems just and proper.

**<u>L.R. 7.3(a)(3) Certification</u>**

I hereby certify I have conferred with all parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion, including by sending multiple letters, emails and phone calls since at least October 21, 2024, but I have been unable to do so.

Dated this the 4th day of February, 2025                  Respectfully submitted,

**CHRISTOPHER F. LANZA, P.A.**
Attorneys for Defendants
290 NW 165TH Street, P-600
MIAMI, FL 33169
PHONE: (305) 956-9040
Email: cfl@lanzalaw.com

By: */S/ Christopher F. Lanza*
Christopher F. Lanza
Florida Bar #996009

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true a correct copy of the foregoing was filed with the

Court's CM/ECF electronic filing system on February 4, 2025, and that the foregoing document

is being served this day on all counsel of record via the transmission of Notices of Electronic

Filing generated by CM/ECF and/or electronic mail and unrepresented parties will be served by

U.S. Mail or by other methods permitted by the Federal Rules of Civil Procedure.

**CHRISTOPHER F. LANZA, P.A.**
Attorneys for Defendants Carl Allen &
Allen Exploration, LLC
290 NW 165TH Street, P-600
MIAMI, FL 33169
PHONE: (305) 956-9040
FAX: (305) 945-2905
Email: cfl@lanzalaw.com

By: */S/ Christopher F. Lanza*
Christopher F. Lanza
Florida Bar #996009

Service List:

Law Office of Richard D. Kibbey, P.A.
Attorneys for Plaintiff
416 Camden Avenue
Stuart, FL 34994
Email: Kibbeylegal@gmail.com

Jason Wandner, P.A.
Attorneys for Plaintiff
100 Biscayne Blvd
#1600
Miami, FL 33132
Email: Jason@Wandnerlaw.com