**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FT. PIERCE DIVISION**

**CASE NO. 24-14336-CIV-MARTINEZ/MAYNARD**

DANIEL PORTER, Individually, and
MARITIME RESEARCH & RECOVERY, LLC,

      Plaintiffs,

v.

CARL ALLEN, Individually, and
ALLEN EXPLORATION, LLC,

      Defendants.

_____/

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR**
**TERMINATING SANCTIONS AND REQUEST FOR HEARING**

**COMES** now the Plaintiffs, Daniel Porter and Maritime Research & Recovery, LLC (hereinafter referred to as MMR) and files this, their Response to the Defendants' Carl Allen, Individually and Allen Exploration, LLC hereinafter referred to as AEX) Motion for terminating Sanctions.

As will be shown in this Response, the Defendants' motion is based on the Defendants' unethical, improper and unauthorized use of Plaintiffs' confidential attorney/client communications.

In this Response the Plaintiffs seek relief for this outrageous improper conduct. This relief includes a finding that the Plaintiffs' release of these communications did not waive their privilege status, the striking of the Defendants' defenses, the expulsion of Defendants' Attorney Christopher Lanza, the denial of the Defendants' Motions to Transfer this case and admit Attorney Concannon

on a Pro Hac Vice basis, a Protective Order barring the Defendants from using these privileged communications, and an award of attorneys' fees.

As grounds in support of the Plaintiffs' request and in response to Defendants' motion, Plaintiffs would show and allege:

1. Prior to this litigation the parties were in business together for nearly four years regarding the salvaging of a sunken Spanish galleon.

2. Plaintiff Daniel Porter had a personally paid for data collection system called "Dropbox" where he stored data for this and other salvage projects he worked on.

3. This Dropbox contained various material including the parties' electronic communications with each other, and many other individuals.  Search and recovery data was also maintained in the Dropbox.  The files of this business history was voluminous, over 500 gigabytes of data which translates into thousands of pages of documents.

4. These documents were filed in the Dropbox under dozens of folders and subfolders.

5. During their four years in business, both the Defendants and Plaintiffs had equal access to these business contents of the Dropbox, with each having the ability to file and remove documents and erase files and data pertinent to this salvage.

6. When the Defendants fired Plaintiff Daniel Porter, Porter authorized the Defendants to make a copy of salvage files in this Dropbox for their future use.

7. Once this litigation started, upon the advice of Counsel, the Plaintiffs electronically secured the Dropbox so that the Defendants could not access or change the contents of the data in the Dropbox.

8. During this litigation, the Plaintiffs sought to search for all electronic communications between them and the Defendants and the Defendants' employees and agents.

9. To assist in this electronic search, Porter used a computer app "Decipher" to search his cell phone for text messages and "WhatsApp" communications with the Defendants.

10. "Decipher" downloaded all text messages and WhatsApp communications found on Porter's phone. This download contained a variety of Porter's communications, including hundreds of messages to and from his family, his social friends and communications with MRR, and his attorneys Richard Kibbey and Jason Wandner.

11. The communications between Porter and his attorneys involved this litigation and were intended by Porter and the attorneys to be confidential attorney/client privileged communications.

12. At no time in this litigation has Daniel Porter or MRR intentionally waived the attorney/client privileges of those communications.

13. Porter loaded the Decipher downloads of his cell phone into his personal Dropbox for future use in this case.

14. The Defendants served a "Request to Produce" to Plaintiffs, seeking a wide range of documents that were maintained during the parties' business together (Exhibit #1).

15. Upon the advice of Counsel, Porter created a new Dropbox folder to collect documents to respond to Defendants' Request for Production. Porter transferred all files he believed pertained to the request into a file he labeled *"MMR_AEX Plaintiffs' Response."*

16. The folder consisted of thousands of pages of documents organized by folders and subfolders of original files created by Porter during his time working with the Defendants.

17. Upon the advice of Counsel, Porter also added to the <u>MRR_AEX Plaintiffs' Response</u> file communications between the <u>parties</u> that the Decipher app found on Porter's cell phone.

18. At no time in the preparation of this file did Porter realize that all of his cell phone messages were transferred to this Response file.

19. Before providing this Dropbox file to his attorneys, Porter made several searches of the file to ensure that no attorney/client communications were included and found none.

20. In several meetings with his attorneys, before this file was released to the Defendants, Porter and the attorneys discussed and reviewed the Dropbox file Response to ensure that attorney/client-related communications were not included. Neither Porter nor his attorneys realized that an obscure file, located within one of the dozens of folders in this file, in fact held the all of his attorney/client text communications between himself, Kibbey and Wandner.

21. On January 27, 2025, Plaintiffs provided this Dropbox file to the Defendants.

22. The Defendants made a complete review of this file and on January 31, 2025 questioned Plaintiffs' Counsel on what they believed were missing files (Exhibit 1).   The Defendants **never** alerted Plaintiffs that the file Plaintiffs provided to them contained inadvertently released attorney/client communications.

23. On February 3, 2025 Attorney Lanza sent a threatening vague and bizarre email to Plaintiffs' Counsel demanding, in essence, they drop their motions to opposing the

Defendants transfer request and the admission of Attorney David Concannon or face sanctions [Exhibit #2].

24. At no time between the date the Defendants received the Plaintiffs Dropbox file and February 4, 2025 did the Defendants ever advise Plaintiffs' Counsel that they had copies of Plaintiffs' attorney/client text messages. The first time the Plaintiffs found out that attorney/client communications had been accidentally sent to the Defendants was when Plaintiffs' attorneys read the Defendants' Motion for Sanctions on February 5, 2025, one day after it was filed. The Plaintiffs sent two emails to Attorney Lanza confirming that the release of the text communications were inadvertent and asked that he not disseminate them and to withdraw his use of them in his pleading [Exhibit # 3]. Lanza never responded to either email.

25. In violation of Local Rule 7.3(a)(3) Attorney Lanza never made <u>any effort</u> to meet, confer or alert the Plaintiffs of his intent to file his Motion for Sanctions or his plan to attach the confidential text messages to the motion.

26. On February 4, 2025 the Defendants filed their Motion for "Terminating Sanctions." Instead of filing their motion or exhibits under seal with this Court, they chose to publicly release all of Plaintiffs' attorney/client text communications by attaching all of them as a 49-page exhibit to the motion.

27. Attorney Lanza's failure to promptly notify the Plaintiffs' Counsel that he was in possession of 49 pages of inadvertently released attorney/client messages was a violation of Florida Bar Rules 4-4.4(b):

> "*A lawyer who received a document or electronically stored information relating to the representation of the lawyer's client and knows or reasonably should know that the document or electronically*

*stored information was inadvertently sent must promptly notify the sender."*

28. In Defendants' motion they seek to immunize themselves from their ethical and legal obligations regarding accidental receipt of privileged material, and the consequences for their egregious conduct, by a short footnote:

> *"Plaintiffs produced these communications to Defendants on January 27, 2025.  Plaintiffs' production was voluntary, intentional, and Plaintiffs have never requested the return of these documents"* (ECF 37, Page 2).

29. The Defendants similarly attempt to excuse their utter disregard of Local Rule 7.3(a)(3) by including in their motion a rambling statement that shows no effort was made to discuss <u>this</u> motion or the Defendants'' receipt of Plaintiffs' attorney/client communications.

30. The Defendants' Motion for Sanctions is a shotgun litany of alleged abuses; none of which are supported by the pleadings filed nor the exhibits attached to their motion. The Defendants rely on four general themes to support their motion:

   a) <u>**Services Agreement Controls**</u> – The Defendants have repeatedly castigated the Plaintiffs and their Counsel for not referring in their Complaint to the fact that in 2019 the parties signed a "Services Agreement."  The agreement was terminated by the Defendants in August of 2021 and replaced by an oral agreement governing Plaintiff Porter's employment.  The Defendants have admitted that an oral agreement replaced the terminated Services Agreement [DE 8, Page 3].

   The Plaintiffs had no legal duty in their Complaint to refer to the "Services Agreement" the parties once had. The facts plead in the Complaint express that the Complaint was based on the oral contract which replaced the Services

Agreement.  The relevancy of the Services Agreement was a potential argument available to the Defendants to defend themselves – nothing more.

b) **Costly and Burdensome Discovery** – The Plaintiffs' Discovery requests have all been reasonable and normal; seeking information to establish not only the terms of the parties' oral agreement, but also evidence to defend the Defendants' Counterclaims.

c) **Opposing Admission of Attorney Concannon** – The Plaintiffs have previously filed exhibits which establish communications between Concannon and Plaintiffs on subjects in this litigation.  These exhibits show that Concannon gave legal advice to the Plaintiffs on issues in this case [DE 20-1, Exhibits A1-A15 and Exhibit B].  The affidavits of Plaintiff Porter and shareholder Mike McDowell which buttress Plaintiffs' position that Concannon was giving legal advice to Plaintiffs on issues in this case.

The text message between McDowell and Porter contained in the Defendants' Motion [DE 37, Page 7] supports the Plaintiffs' position that Concannon was providing legal advice to the Plaintiffs: ***"… we were accepting his advice and guidance…"*** McDowell's affidavit fairly reflects that.

The Defendants' claim in Paragraphs 18 (dealing with Concannon) that the Plaintiffs and Counsel have "repeatedly asserted" that Concannon was "even paid to do so" (DE 37, Page 9, Paragraph 18) is false.  Plaintiffs did file as an exhibit, a Concannon email, wherein he informed the Defendants that he was charging them for advice he was rendering to the Plaintiffs [DE 20-1, Exhibit A-5].

d) **Plaintiffs Knew No Agreement Ever Existed Regarding Division of Treasure**

The "testy exchange" between Plaintiff Porter and Defendant Allen cited by the Defendants in Paragraph 6 of their motion (DE 37, Page 3) in no way confirms that

Plaintiffs and their Counsel knew no oral agreement existed between the parties. The exchange occurred after Porter was fired, and reflects two things: a "charter agreement" regarding the Defendants' use of vessels the Plaintiff controlled, and a "formal offer" on division of artifacts; a negotiation between the parties on what is owed versus what the Defendant was willing to pay.

31. This rogue act by the Defendants and their attorney of public release and use of confidential communications is part of their overall strategy in defending this case: they have not provided one document sought by Plaintiffs, they have not produced a key witness for deposition, and their pleadings have consistently denigrated the Plaintiffs and their lawyers. Here are but a few of Defendants' Counsel's unprofessional insults about Plaintiffs' Counsel:

> *"As is their custom Plaintiffs have seriously misrepresented the facts in their Reply and they have withheld critical evidence from this Court…"* [DE 23, Page 3].

> *Plaintiffs have misrepresented the facts. Again."* [DE 23-1, Page 2]

> *"As is their custom, Plaintiffs have seriously misrepresented the facts in their Reply and they have withheld critical evidence from this Court…"* [DE 23-1, Page 2]

> *"It could not be more obvious that Plaintiffs have filed their motion and grossly distorted facts in a tactical effort… the Court should not allow this persecution to continue."* [DE21, Page 2 and Page 9].

> A. *"Plaintiffs' mendacity continues* [DE 25, Page 1].

> *"Outrageous misrepresentation that Plaintiffs' Reply brief presented"* [DE 25, Page 2].

> *"…Plaintiffs are attempting to block the Defendants from fully informing this Court of the truthful nature of the parties' relationship." [DE 25, Page 3].*

8

> *"Plaintiffs' strategy is clear: waste time and precious resources by harassing the Defendants and their Counsel..."* [DE 25, Page 3].

> *"...after they were caught trying to hide the existence of a written agreement..."* [DE 27, Page 1]

> *"Plaintiffs' proposed amendment is made in bad faith with a dilatory motive." [DE 27, Page 2].*

> *"Throughout this litigation Plaintiffs' Counsel has consistently ignored Florida Bar Guidelines for Professional Conduct. The Court should not reward this misbehavior." [DE 31, Page 2].*

Their insults and slurs are not only baseless, but they also violate rules regulating the Florida Bar 4-8.4(d) by engaging in conduct that is prejudicial to the administration of justice for a lawyer to *"knowingly or through callous indifference disparage, humiliate... other lawyers on any basis."*

32. In sum, the evidence cited by the Defendants in their Motion for Sanctions proves little more than the Plaintiffs' good faith conduct in this litigation.

The Plaintiffs have not opined nor explained the relevance of the illegally used attorney/client communications Defendants have filed with this Court, lest it be argued that Plaintiffs doing so is a waiver of that privilege.  Plaintiffs would gladly do so if this Honorable Court ordered further explanations would not be a waiver of the privilege.

33. Given the pleadings Plaintiffs have filed, which set out in detail the repetitive obstructive conduct of the Defendants regarding discovery, their continued ignoring of the Discovery Rules, Local Rules and this Court's Order governing discovery, it is of little surprise that the Defendants have now chosen to violate a clear ethical rule

governing the receipt and use of Plaintiffs' privileged communications with their attorneys. But having done so, and their history of discovery abuses, they must now pay the price.

34. The Plaintiffs seek this Honorable Court to grant the following relief to them:

a) Find that the Plaintiffs' inadvertent release of privileged text messages was not a waiver of the privilege attendant to attorney/client communications.

b) Disqualify Attorney Christopher Lanza from representing the Defendants in this case.

c) Disqualify any other attorney Lanza has worked with in the drafting or filing of the Defendants' Motion for Sanctions or who has reviewed the Defendants' Exhibit #1 of these communications from representing the Defendants in this case.

d) Order the Defendants and their Counsel to destroy and not further disseminate the Plaintiffs' attorney/client communications.

e) Order the Clerk of this Court to strike or remove Exhibit A filed by the Defendants with their Motion for Sanctions.

f) Strike the Defendants' defenses and counterclaims.

g) Deny the Defendants' Motion to Transfer this case to Texas.

Award attorneys' fees to Plaintiffs for their time spent responding to this motion.

## **REQUEST FOR HEARING**

Plaintiffs' request a hearing be held on the Defendants' Motion for Sanctions. Plaintiffs believe that a hearing will establish a more detailed record of the Defendants and their Counsel's misconduct, and provide further evidence to support the relief requested by the Plaintiffs.

This hearing would take approximately three (3) hours.

## MEMORANDUM OF LAW

The confidentiality of attorney/client communications is the bedrock foundation of the public's trust in the legal profession and the judicial system.

The attorney/client privilege is one of the oldest privileges for confidential communications. The United States Supreme Court has stated that by assuring confidentiality, the privilege encourages clients to make "full and frank" disclosures to their attorneys, who are then better able to provide candid advice and effective representations. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

The Defendants made a high-stakes bet in deciding to violate the sanctity of the attorney/client privilege; that their punishment by this Court would be outweighed by the benefits of embarrassing the Plaintiffs and their attorneys by publicly filing these communications.

Their conduct, repugnant to the honor of the legal profession, is in clear violation of the Florida Bar Rules governing an attorney's conduct when an attorney receives inadvertently released confidential communications (Rule 4-4.4 of the Rules and Regulations of the Florida Bar).

It is telling of the Defendants' motivations and conscious decision to violate this Rule by noting that their only justification for publicly releasing the texts was a footnote: *"Plaintiffs' production was voluntary, intentional and Plaintiffs have never requested the return of these communications"* (DE 37, Page 2). This footnote demonstrates that the Defendants studied the issue of waiver of privilege and crafted the footnote in the hopes it would absolve them from the consequences of their illegal acts.

If the Defendants and Lanza were sure of Plaintiffs "voluntary" release of the privileged documents, why didn't the Defendants follow the dictates of L.R. 7.3(a)(3) and speak or email the

Plaintiffs with <u>any</u> form of message that they possessed the communications and intended to use them?

Given that these privileged communications were bundled with personal communications between Plaintiff Porter and his family members and social friends destroys the Defendants' unsupported self-serving footnote. They knew Plaintiffs' attorney/client messages were inadvertently sent and seized upon it to try to gain an advantage in this case.

## <u>DISQUALIFICATION OF COUNSEL IS REQUIRED</u>

Attorneys must avoid even the appearance of professional impropriety,
> ***"even an appearance of impropriety may, under the appropriate circumstances require prompt remedial action from the Court... Consequently, any doubt is to be resolved in favor of disqualification."***

<u>State Farm Mutual v. K.A.W</u>., 575 So.2d 630, 633 (Fla 1991) cited with approval: <u>Transamerica Rental Finance Company v. Rent Club, Inc.,</u> 811 F. Supp 651 (M.D. Fla. 1991).

A violation of a Florida Bar Rule 4-8.4(d) was the basis for disqualification of an attorney in <u>Transamerica</u> after the Court conducted a two-pronged test:

<u>First</u> – While no actual proof of wrongdoing is required, there needs to be a reasonable possibility that some specifically identifiable impropriety occurred.

<u>Second</u> – The likelihood of public suspicion must outweigh the social interest that will be served by the attorney's continued participation.

Here Attorney Lanza's egregious conduct more than satisfies both prongs.  Violation of Rule 4-4.4(b) and his disparaging comments violating Rule 4-4.8(d) against Plaintiffs' Counsel cannot be denied.  Secondly, the likelihood of public suspicion is self-evident.  The likelihood of public suspicion about the integrity of this judicial proceeding, the ethics a lawyer must abide by, and the sanctity of privileged communications were all brought into question when Lanza publicly

released Plaintiffs' confidential communications.  He created doubt, uncertainty and brought shame on the integrity of the judicial process and the legal profession.

This Court has the "inherent authority to control and preserve the integrity of the judicial proceedings" and can do so by imposing appropriate sanctions upon errant lawyers practicing before it."  *Malautea v. Suzuki Motor Co.,* 987 F.2d 1536, 1545 (11th Cir. 1993)

Where an attorney copied and used privileged documents of his opponent, his pro hac vice status on the case was revoked, a protective order was granted prohibiting the attorney's client from using the documents, and attorney's fees were awarded.  In Re *Southeast Banking Corp.* 212 B.R. 386 (S.D. Fla 1997).

In cases of voluminous discovery mistakes such as disclosure of privileged documents is likely to occur."  See *U.S. v. Pepper Steel and Alloys*, 742 F. Supp 641 (S.D. Fla 1990).  Inadvertent disclosure of privileged documents by an attorney does mot waive the attorney/client privilege attached to those documents.  It is the client whom the privilege belongs and an attorney's disclosure does not constitute a waiver of the privilege.  *Georgetown Manor v. Ethan Allen, Inc.,* 753 F. Supp 936, 938 (S.D. Fla 1991).

Clearly the Defendant and their Counsel deserve the remedies and sanctions requested by Plaintiffs given their flagrant conduct here.  To do anything less weakens public respect for this Court and their trust in the fairness of the judicial system that society expects, and needs.

**LAW OFFICE OF RICHARD D. KIBBEY, P.A.**
Attorney for the Plaintiffs
416 SW Camden Avenue
Stuart, FL 34994
Telephone: (772)286-0023

/s/ Richard D. Kibbey
**RICHARD D. KIBBEY**
Florida Bar No. 255149
Email: Kibbeylegal@gmail.com

**JASON M. WANDNER, P.A.**
Attorney for the Plaintiffs
100 N. Biscayne Blvd, Suite 1607
Miami, FL 33132
Telephone: (786)412-1505

/s/ Jason M. Wandner
**JASON M. WANDNER**
Florida Bar No. 0114960
Email: Jason@wandnerlaw.com

## CERTIFICATE OF SERVICE

*I HEREBY CERTIFY* that a true and correct copy of the foregoing document was

electronically filed with the Clerk of the Court using the CM/ECF system, on this 8th day of

February, 2025, and that the foregoing document is being served this day on all counsel of record

identified on the attached Service List, via transmission of Notices of Electronic Filing generated

by CM/ECF:

**CHRISTOPHER F. LANZA, P.A.**
Attorneys for Defendants Carl Allen & Allen
Exploration, LLC
290 NW 165th Street, P-600
Miami, FL 33169
Phone: (305) 956-9040
Email: cfl@lanzalaw.com

14

# EXHIBIT 1

 Gmail

**Richard Kibbey <kibbeylegal@gmail.com>**

## Production of Documents - Missing Documents - Empty Folders

*EXHIBIT #1*

1 message

**Christopher Lanza** <cfl@lanzalaw.com>                                    Fri, Jan 31, 2025 at 10:03 AM
To: Jason Wandner <jason@wandnerlaw.com>, Richard Kibbey <kibbeylegal@gmail.com>

Dear Counsel:

I have reviewed the documents you provided via dropbox link. There are numerous empty folders, meaning documents were deleted from these empty folders. I attach a list of empty folders and missing documents and / or data that should have been included. (See attached list). Please advise as to when you will provide these missing items.

*Sincerely,*

 *Christopher F. Lanza, Esquire*

### CHRISTOPHER F. LANZA, P.A.

290 NW 165th Street, Suite P-600

Miami, FL 33169

Phone:    **(305) 956 - 9040**

Fax:       **(305) 945 - 2905**

Email:    cfl@lanzalaw.com

**CONFIDENTIAL COMMUNICATION**: Warning, this electronic message (and attachments) contains confidential information and is intended only for the specified recipient. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail message by mistake and delete this e-mail notification from your system. E-mail transmission cannot be guaranteed to be secured or error-free as information could be intercepted, corrupted, lost, destroyed, delayed or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is required please request a hard-copy version. *CHRISTOPHER F. LANZA, P.A.  | CFL@LANZALAW.COM*

---

📄 **Dropbox Folders Without  Documents (1).pdf**
   76K

# EXHIBIT 2

 Gmail

**Richard Kibbey <kibbeylegal@gmail.com>**

## Fwd: Porter et al v. Allen et. al
1 message

*EXHIBIT #2*

**Jason Wandner** <jason@wandnerlaw.com>
To: kibbeylegal <kibbeylegal@gmail.com>

Sat, Feb 8, 2025 at 8:35 AM

Sent from my iPhone

Begin forwarded message:

**From:** Christopher Lanza <cfl@lanzalaw.com>
**Date:** February 3, 2025 at 11:10:52 PM EST
**To:** Richard Kibbey <kibbeylegal@gmail.com>, Jason Wandner <jason@wandnerlaw.com>
**Subject: Porter et al v. Allen et. al**

Gentlemen:

I just finished preparing and filing Defendants' Memorandum in Opposition to Plaintiffs' Second Motion for Sanctions Including Entry of Default Judgment. In going through all of your filings, your continued insistence on sending harassing discovery requests and deposition notices, the discovery served to date, and the incomplete responses to Defendants' discovery requests, I thought I would ask you one last time to withdraw Plaintiffs' Motion to Disqualify David Concannon, Plaintiffs' memorandum in opposition to Defendants' Motion to Transfer, and your Motion for Leave to File an Amended Complaint. We have discussed the need for Defendants to move for sanctions to remedy the harm caused by Plaintiffs' vexatious litigation and dilatory tactics. I would like to avoid this but, if you do not agree to these requests, you leave me no choice. Please let me know tomorrow morning if you will do so.

Thank you,

*Sincerely,*


*Christopher F. Lanza, Esquire*

# EXHIBIT 3

 Gmail

**Richard Kibbey <kibbeylegal@gmail.com>**

## (no subject)
1 message

*EXHIBIT #3*

**Jason Wandner** <jason@wandnerlaw.com>                    Wed, Feb 5, 2025 at 8:27 PM
To: Christopher Lanza <cfl@lanzalaw.com>
Cc: kibbeylegal <kibbeylegal@gmail.com>

Chris, Richard and I just discussed your recent filing.

You would have thought that you would have considered the ethical ramifications of exposing attorney client
communications that were clearly not intended for you in a meet and confer.

But no, prior to your filing, you sent a coercive take it or leave it email that was silent as to the basis of your motion and
said nothing about the attorney client communications you came into possession of by obvious error. You then filed your
motion the next day without picking up a phone or explaining the issue at hand.

Notwithstanding that none of the communications remotely create a sanctionable issue, even if admissible, which they are
not,  your conduct in failing to raise it prior to filing your motion is clearly violative of your ethical obligations.

You should withdraw your motion accordingly.

--

Thank You,


JASON M. WANDNER, ESQUIRE


**LAW OFFICES OF JASON M. WANDNER, P.A.**
Miami-Dade Office
New World Tower
100 N. Biscayne Boulevard
Suite 1607
Miami, Florida 33132
Telephone (305) 868-1655
Fax (305) 503-7480

 Gmail

**Richard Kibbey <kibbeylegal@gmail.com>**

## Re:
1 message

*[EXHIBIT #3*

**Jason Wandner** <jason@wandnerlaw.com>
To: Christopher Lanza <cfl@lanzalaw.com>
Cc: kibbeylegal <kibbeylegal@gmail.com>

Thu, Feb 6, 2025 at 7:37 AM

To follow up my email of last night in response to your Motion for sanctions, according to Rule Regulating the Florida Bar 4-4.4(b), you were obligated to promptly notify us of the attorney client documentation you inadvertently received in the drop box discovery response. Going back to your emails, on 1/31/25, at 10:03 AM, you sent us an email wherein you indicated you reviewed discovery from the drop box and attached a list of what you claim were omitted items. Nowhere in that email do you reference what you would have already recognized, having reviewed the submission enough to identify what you claim was omitted, that attorney client communication was inadvertently included within the discovery submissions. Then again, on 2/3/25, you follow up with an email threatening that if we don't abandon our positions on multiple motions we have filed regarding venue transfer and appearance of Concannon, you will file a sanctions motions in retaliation. That email also contained no reference to the inadvertently obtained attorney client communication. And again, rather than pick up the phone and call to notify us, you attach the communication to a baseless motion for sanctions and file it on a public court docketing platform the very next day.

In Yesterday's email I requested that you withdraw your motion for sanctions and all attachments including the inadvertently obtained attorney client communication. In addition to that, I request you refrain from disseminating those communications to any third party and your clients until the issue of the application of privilege and any sanction for your misconduct can be litigated.

We intend on filing a motion for protective order in relation to this issue and request you to agree that the communication is privileged.

We also intend on filing a Third Sanctions Motion in relation to your failure to provide us prompt notice pursuant to aforementioned Bar Rules and case law.

We are available for meet and confers on both of these issues at your convenience. 7864121505.

On Wed, Feb 5, 2025 at 8:27 PM Jason Wandner <jason@wandnerlaw.com> wrote:
Chris, Richard and I just discussed your recent filing.

You would have thought that you would have considered the ethical ramifications of exposing attorney client communications that were clearly not intended for you in a meet and confer.

But no, prior to your filing, you sent a coercive take it or leave it email that was silent as to the basis of your motion and said nothing about the attorney client communications you came into possession of by obvious error. You then filed your motion the next day without picking up a phone or explaining the issue at hand.

Notwithstanding that none of the communications remotely create a sanctionable issue, even if admissible, which they are not, your conduct in failing to raise it prior to filing your motion is clearly violative of your ethical obligations.

You should withdraw your motion accordingly.

--